KATHLEEN ANN KEOUGH, A.J., DISSENTING:
 

 {¶ 65} Respectfully, I dissent. I would hold that the trial court's judgment that Cantrall was sane at the time of the acts was against the manifest weight of the evidence and, accordingly, I would vacate Cantrall's conviction.
 

 {¶ 66} In reaching its verdict, the trial court relied solely upon Dr. Grewal's opinion
 that at the time he committed the offenses, Cantrall understood the wrongfulness of his acts. But Dr. Grewal's report is obviously flawed and unreliable.
 

 {¶ 67} First, Dr. Grewal interviewed Cantrall in October 2015, well after the incident at issue and after he had been consistently taking his medication for several months and could once again think clearly and rationally. She testified that before she began interviewing Cantrall, she told him that he would be hospitalized if he were found insane. Cantrall immediately expressed concern about being hospitalized again. Nevertheless, Dr. Grewal conducted the interview and wrote her report, despite setting the stage with a statement that would obviously affect Cantrall's answers in his effort to avoid being hospitalized again.
 

 {¶ 68} Furthermore, although Dr. Grewal testified several times that there "was nothing" in the July 2015 records from St. Vincent Hospital indicating that Cantrall did not appreciate the wrongfulness of his acts, she also testified that she never reviewed the records. She admitted that she only reviewed Dr. Fabian's report, which she acknowledged merely "summarized" the records. Because the St. Vincent Hospital records regarding Cantrall's psychosis in the ten days leading to his arrest were essential to understanding his state of mind on the date of his arrest, Dr. Grewal was negligent in not obtaining the records before writing her report. As a result, her report was materially deficient.
 

 {¶ 69} Moreover, Dr. Grewal simply assumed that Cantrall understood the wrongfulness of his actions because he went into the house on July 28, 2015, when the police arrived. The trial court based its conclusion that Cantrall was sane solely on this theory by Dr. Grewal. But Dr. Grewal acknowledged that Cantrall never told her that he ran into the house to avoid apprehension, and the record does not support her conclusion. Rather, the record demonstrates that Cantrall, who had been admitted to St. Vincent Hospital twice within the 14 days prior to the incident at issue and desperately wanted to avoid being hospitalized again, ran into the house to avoid being taken back to the hospital, not because he knew that what he had done was wrong. In fact, the record reflects that Cleveland police took Cantrall to St. Vincent Hospital on July 14, 2015, when he was hospitalized the first time. In the days following his first hospitalization, the police responded to numerous complaints about Cantrall, and Saker testified that every time Cantrall saw the police, he would run into the house.
 

 {¶ 70} In light of Dr. Grewal's inappropriate statement to Cantrall that he would be hospitalized if he were found insane, her failure to review the St. Vincent Hospital records regarding Cantrall's psychosis and mania in the ten days prior to the incident that led to his arrest, and her incorrect assumption that Cantrall understood the wrongfulness of his actions merely because he ran into his house when the police arrived, I find that the trial court erred in relying upon Dr. Grewal's report in finding Cantrall sane at the time of the offense.
 

 {¶ 71} Significantly, Dr. Fabian's report -which included the records from St. Vincent Hospital-noted that Cantrall was diagnosed there with schizoaffective disorder. Because Dr. Grewal did not review the St. Vincent Hospital records, she totally missed this diagnosis. Moreover, despite Cantrall's two hospitalizations, Dr. Grewal diagnosed him as suffering only from borderline personality disorder, a mental illness that generally does not require any hospitalization.
 

 {¶ 72} Dr. Fabian determined that due to his psychotic thinking, Cantrall would
 not have known on July 28, 2015, that what he was doing was illegal. In light of the deficiencies with Dr. Grewal's report explained above, I would find that the trial court erred in ignoring Dr. Fabian's expert opinion that Cantrall did not appreciate the wrongfulness of his acts. Accordingly, I would sustain the assignment of error, find that Cantrall established the affirmative defense of not guilty by reason of insanity, and vacate his conviction.